IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVONY, LLC and | ) | |
| REGAN MERCANTILE, LLC | ) | Civil Action No. _____ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JURY TRIAL DEMANDED |
| vs. | ) | |
| | ) | |
| PHILIP HOLLAND and | ) | |
| JIMMY HOLLAND, | ) | |
| d/b/a XANDIUM STUDIOS, | ) | |
| d/b/a WWW.XANDIUMSTUDIOS.NET, | ) | |
| a/k/a ZERO, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiffs Evony, LLC ("Evony") and Regan Mercantile, LLC ("Regan Mercantile"),

(collectively, "Plaintiffs"), allege as follows:

### Nature of the Action

1.      This is a complaint for copyright infringement, trademark infringement, breach of

contract, and tortious interference with business relations arising out of defendants Philip

Holland's and Jimmy Holland's (collectively, "Defendants") deliberate and willful copying,

hacking and unauthorized distribution of Plaintiffs' property in direct violation of Plaintiffs'

intellectual property rights, breaching Plaintiffs' terms of use limiting access to its intellectual

property, and tortiously interfering with Plaintiffs' contractual and advantageous relations.

2.      As described in more detail herein, Defendants acknowledge owning and

operating a website known as "Xandium Studios" at www.xandiumstudios.net devoted to

copying, hacking into and allowing users to "cheat" while playing Plaintiffs' *Evony*® online

computer game ("*Evony* Game").  Specifically, Defendants offer for sale and sell under

Plaintiffs' trademark computer code packages designed to enable users who have entered into "Terms of Use" agreements with Plaintiffs to "cheat" while playing Plaintiffs' *Evony* Game and to circumvent Plaintiffs' technological measures designed to prevent unauthorized access to, and protect Plaintiffs' exclusive rights in, its copyrights. Defendants have published and displayed a copy of the copyrighted *Evony* Game to be played from Defendants' website. In addition, Defendants host forums and online discussion threads under the username "Zero," promoting themselves as the maker of "bots, proxies, hacks" devoted to infringing Plaintiffs' intellectual property rights and inducing users of the *Evony* Game to breach their "Terms of Use" agreements with Plaintiffs and to infringe Plaintiffs' intellectual property. Defendants wanton, malicious and willful conduct infringes Plaintiffs' copyrights and trademarks, violates the "Terms of Use" agreement with Plaintiffs pursuant to which they gained access to the *Evony* Game, and tortiously interferes with Plaintiffs' present and future contractual relations with customers.

3.      Despite being placed on actual notice of its infringing activity, Defendants publicly boasted that they intend to continue infringing and encouraging others to infringe Plaintiffs' intellectual property rights and to breach contracts with Plaintiffs as revenge for Plaintiffs' lawful takedown notifications issued to Defendants' internet service provider pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(c).

4.      Plaintiffs seek monetary and punitive damages, preliminary and permanent injunctive relief, and an accounting of Defendants' profits as a result of Defendants' wanton and willful conduct.

### The Parties

5.      Plaintiff Evony is a limited liability company organized and existing under the

laws of the State of Delaware, with a principal place of business in New York, New York.

6.     Plaintiff Regan Mercantile is a limited liability company organized and existing under the laws of the State of New York, with a principal place of business in New York, New York.

7.     On information and belief, Defendant Philip Holland, also known as "Zero," is an individual doing business as Xandium Studios, www.xandiumstudios.net, and resides in Pittsburgh, Commonwealth of Pennsylvania.  *See* Exhibit A.

8.     On information and belief, Defendant Jimmy Holland, also known as "Zero," is an individual doing business as Xandium Studios, www.xandiumstudios.net, and resides in Pittsburgh, Commonwealth of Pennsylvania.  *See* Exhibit B.

## Jurisdiction and Venue

9.     This Court has original jurisdiction over Plaintiffs' Copyright Act, Digital Millennium Copyright Act and Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338.

10.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the claims in this action for which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the Unites States Constitution.

11.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. §§ 1391 and 1400 because this is the judicial district wherein, on information and belief, the Defendants or their agent reside and a substantial part of the events or omissions giving rise to the claims occurred.

## General Allegations

### *Plaintiffs' Evony® Game*

12.    Plaintiffs develop, publish and operate online video games, including the *Evony* Game, available at www.evony.com.

13.    The *Evony* Game is a Massively Multiplayer Online Real-Time Strategy ("MMORTS") game set in the middle ages with over 18 million players around the world that enables players to build fortifications, explore vast environments, manage cities, form alliances and wage war with or against other players in order to build an empire.

14.    New players of the *Evony* Game start the game as an undeveloped town whereby the player must devote a significant amount of time and effort to grow in size, strength and power in order to compete and survive against millions of other players seeking to conquer the same environment.

15.    To enhance the player's gaming experience, players must explore the environment to locate resources, such as raw materials (e.g. gold, stone and wood), which can be used to enhance the physical, economic and military strength of the player's burgeoning empire through the construction of buildings (e.g. libraries, barracks, fortifications) in order to enable the character's empire to grow, expand and compete against other players.

16.    Exploration of the *Evony* Game environment, gathering of resources, construction of buildings and expansion of power is a time consuming commitment for players that contributes to the overall playing experience and sense of community among *Evony* Game players.

17.    While the *Evony* Game is free to play and no subscription fee is required, certain features, enhancements and packages can be purchased a la carte in order to accelerate the

development process of the player's empire and speed by which the player can advance in the game in order to enhance the *Evony* Game experience for players who desire to reach a more competitive advantage in the *Evony* Game world at a much faster rate.

18.     The gaming experience of legitimate *Evony* Game players is unfortunately compromised by cheaters and hackers who seek to exploit the *Evony* Game for their own illegitimate goals, thus requiring Plaintiffs to impose contractual obligations on all players as well as technical measures to secure the *Evony* Game and its legitimate players.

19.     The computer code that forms the massive, detailed and complex *Evony* Game world consists of copyrighted works owned by Plaintiffs that took a significant amount of expression, time, energy, money and resources to create.

20.     Evony has received U.S. copyright registrations TX007175070 and TX007175079 for the *Evony* Game.  *See* Exhibits C and D, attached herewith.

21.     Plaintiffs' copyrights in the *Evony* Game protect virtually all creative aspects of the *Evony* Game, including the computer code and data that forms the game client, all graphical and textual elements of the screens that appear to users, graphical and textual elements underlying the operation of the game, and all animations, sound recordings and other audio-visual elements.

22.     Evony has received a U.S. trademark registration for the word mark EVONY for computer games and services.  *See* Exhibit E, attached herewith.

23.     The non-functional elements comprising the look and feel of the *Evony* Game, taken together, comprise Plaintiffs' trade dress that has become synonymous with Plaintiffs as the source of quality MMORTS games.  *See* Exhibit F.

24.     Plaintiffs have expended substantial resources advertising and marketing the look and feel of the *Evony* Game in order to identify Plaintiffs as the source of the *Evony* Game, including over $12 million in worldwide advertising and marketing campaigns focusing on online venues, such as content networks, banner advertising, portals, publishers' websites, social media, search engines and email marketing on a consistent basis since 2009.

25.     Unlike traditional video games, players do not need to purchase software to play the *Evony* Game, but instead must create an account that enables the copyrighted client game code ("*Evony* Game Client") to be played online by accessing internet servers maintained by Plaintiffs.

26.     The *Evony* Game Client is designed to work only with the computer servers maintained and operated by Plaintiffs, accordingly, only players who have agreed to the "Terms of Use" agreement for playing the *Evony* Game, provided legitimate email addresses and user passwords, and created a valid account through Plaintiffs are authorized to access the *Evony* Game servers.

27.     Plaintiffs' account validation system is a technological measure designed and implemented by Plainitffs to prevent unauthorized access to its copyrighted material.

28.     The *Evony* Game has a distinct look and feel that is appealing to players and distinguishes the *Evony* Game from alternative MMORTS games.

29.     The *Evony* Game experience includes forums, internal email and real-time chat capabilities that enhance the *Evony* Game community experience.

## The Evony® Game Terms of Use Agreement

30.     Prior to playing the *Evony* Game through the *Evony* Game website at www.evony.com, prospective users are required to create a user account by clicking the button labeled "Play."

31.      Before clicking the "Play" button, users are informed that by clicking the "Play" button they acknowledge having read and agreed to the "Terms of Use" agreement ("Terms of Use," attached herewith as Exhibit G), which is displayed to prospective players by clicking the phrase "Terms of Use."

32.     Any use of the *Evony* Game Client or access to the *Evony* Game servers that is not in accordance with the Terms of Use is prohibited.

33.     The very first term of the Terms of Use prohibits accessing the *Evony* Game servers with any modified *Evony* Game Client or with any other software.  *See* Exhibit G, ¶ 1.

34.     The Terms of Use expressly prohibits the "use of cheats, automation software (bots), hacks, mods or any other unauthorized third-party software, databases or scripts designed to modify the Evony experience; … exploit[ation of] the game or any of its parts, including without limitation the Service, for any commercial purpose…; use [of] any unauthorized third-party software that intercepts, 'mines', or otherwise collects information from or through the game or the Service, including without limitation any software that reads areas used by the Game to store information about a character or the game environment; … facilitate, create or maintain any unauthorized connection to the Game or the Service."  *See* Exhibit G, ¶ 2.

35.     The Terms of Use expressly states that users shall not "reverse engineer, decompile, or disassemble Evony, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation." *See* Exhibit G, ¶ 2.8.

36.     The Terms of Use further prohibits actions that "[d]isrupt the normal flow of dialogue in Chat or otherwise act in a manner that negatively affects other users including without limitation posting commercial solicitations and/or advertisements for goods and services available outside of the Evony game." *See* Exhibit G, ¶ 9.2.3.

### *Defendants' Unlawful Conduct*

37.     Defendants acknowledge owning and operating www.xandiumstudios.net. *See* Exhibits A and B.

38.     Defendants' www.xandiumstudios.net website is devoted to cheating, hacking and publishing unauthorized copies of Plaintiffs' *Evony* Game and accessories for Plaintiffs' *Evony* Game without Plaintiffs' permission.

39.     Upon information and belief, beginning in 2009, Defendants, or individuals at the direction of Defendants, agreed to Plaintiffs' Terms of Use and created multiple accounts on Plaintiffs' website, www.evony.com, in order to play the *Evony* Game and gain access to the *Evony* Game Client.

40.     Defendants created an independent server, copied the copyrighted *Evony* Game Client and published its own copy of the *Evony* Game, known as "Evony Second Opinion," that enabled users to play an unauthorized copy of the *Evony* Game operated on the Defendants' website. *See* Exhibits H and I.

41.     While some of Evony's customers are repeat players who spend a significant amount of time playing the *Evony* Game on a regular basis, millions of potential players who hear about the *Evony* Game and are searching to play the game on the internet are likely to be confused by Defendants' infringing conduct, visit Defendants' website advertising the

unauthorized *Evony* Game and play the unauthorized version or purchase Defendants' products believing that they are supplied by, or otherwise associated with, the Plaintiffs.

42.     Defendants have designed and distributed, and continue to design and distribute, a product known as Evony Task Automater ("ETA"), which Defendants describe as "an Evony scripting bot for the purpose of automating in game actions for extended periods of time," without Plaintiffs' permission or authorization. *See* Exhibit J.

43.     Upon information and belief, Defendants' ETA product is a "bot" designed to cheat while playing the *Evony* Game by automatically gathering resources and building improvements to the players' empire without instructions from the player so the player's empire can grow and expand while the player is not playing the game.

44.     Use of Defendants' ETA product requires players to circumvent Plaintiffs' technological login security procedures and instead permits access to the *Evony* Game through Defendants' servers.

45.     Defendants have sold, and continue to sell, a cheat program known as Evomap without Plaintiffs' permission or authorization that enables players of the *Evony* Game to login to Plaintiffs' servers and scan the *Evony* Game Client by bypassing Evony's in-game technological protocols in order to locate resources and steal information from other users for the purpose of gaining an unfair advantage over legitimate players.

46.     Defendants' unauthorized Evomap program clogs Plaintiffs' servers and drains Plaintiffs' server resources, creating a significant negative impact on the speed and quality of the *Evony* Game experience for players, resulting in complaints from legitimate players of the *Evony* Game, loss of current and prospective players of the *Evony* Game, loss of profits and damage to Plaintiffs' good will.

47.     Upon information and belief, Defendants have sold, and to continue to offer for sale, subscriptions for its unauthorized products, including subscriptions ranging from $3.00 to $100.00 per month. *See* Exhibit K.

48.     Defendants advertise their products within the *Evony* Game forums and "spam" users with unsolicited commercial advertisements for its unauthorized products without the permission of Plaintiffs and in direct violation of the Terms of Use.

49.     Plaintiffs have received numerous complaints from legitimate players of the *Evony* Game regarding the spamming and unsolicited advertising by Defendants and use of Defendants' products by other players.

50.     On or about February 10, 2010, Plaintiffs sent a "takedown notification" to the designated agent of The Planet, the internet service provider for www.xandiumstudios.net, pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), demanding that the infringing content on www.xandiumstudios.net be taken down or access to the site be disabled. *See* Exhibit L.

51.     In response to Plaintiffs' February 10, 2010 DMCA "takedown notification," The Planet removed or blocked access to Defendants' infringing website. *See* Exhibit L.

52.     Upon information and belief, Defendants sent an unsigned DMCA "counter notification" to The Planet dated June 5, 2010 pursuant to 17 U.S.C. § 512(g). *See* Exhibit A.

53.     The Planet did not inform Plaintiffs of Defendants' unsigned June 5, 2010 "counter notification" until July 6, 2010. *See* Exhibit L.

54.     Upon information and belief, despite being on actual notice of Defendants' allegations of intellectual property infringement, Defendants moved their infringing material and website to a different internet service provider, Peer 1, and utilized a Peer 1 server hosting

service, ServerBeach, to run its website, offer for sale and sell its infringing products, and publish its infringing Evony Second Opinion game.

55.     On or about January 4, 2011, Plaintiffs sent a DMCA takedown notification to the designated agent of Pier 1 / ServerBeach, pursuant to 17 U.S.C. § 512(c), demanding that the infringing content on www.xandiumstudios.net and server be taken down or access to the site and server be disabled. *See* Exhibit M.

56.     On or about January 4, 2011, Defendants posted a discussion thread on one of the forums of its website, www.xandiumstudios.net, quoting from and discussing Plaintiffs' February 10, 2010 and January 4, 2011 DMCA takedown notifications, and admitting that they violated Plaintiffs' Terms of Use. *See* Exhibit N.

57.     In response to Plaintiffs' January 4, 2011 DMCA takedown notification, Pier 1 / ServerBeach took down or disabled access to www.xandiumstudios.net and server pursuant to the requirements of the DMCA. *See* Exhibit M.

58.     Based on information provided by Pier 1, Defendants sent Pier 1 a DMCA "counter notification" pursuant to 17 U.S.C. § 512(g) stating under the pain and penalty of perjury that "this material was removed or disabled in error as a result of mistake or misidentification of the material." *See* Exhibit O.

59.     On or about January 5, 2011, Plaintiffs began the process of transferring their servers and website to a different internet service provider in the United Kingdom in order to continue willfully infringing Plaintiffs' intellectual property rights, breaching the Terms of Use, and to avoid liability in the United States. *See* Exhibits N and M.

60.     On or about January 18, 2011, Defendants posted a new forum on their website providing instructions to third parties on how to circumvent Plaintiffs' account validation system using Defendants' products.  Exhibit P.

### COUNT I
### COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501 *et seq.*

61.     Plaintiffs reallege and incorporate as if fully set forth herein the allegations contained in Paragraphs 1 through 60.

62.     Evony is the owner of all exclusive and substantial rights and privileges in U.S. Copyright Registration No. TX007175070 for the *Evony* Game ("the '070 Copyright").  A true and correct copy of the '070 Copyright registration certificate is attached herewith as Exhibit C.

63.     Evony is the owner of all exclusive and substantial rights and privileges in U.S. Copyright Registration No. TX007175079 for the *Evony* Game ("the '079 Copyright").  A true and correct copy of the '079 Copyright registration certificate is attached herewith as Exhibit D.

64.     Defendants had access to Plaintiffs' copyrighted material.

65.     Upon information and belief, Defendants copied Plaintiffs' copyrighted material and/or substantial portions of Plaintiffs' copyrighted material.

66.     Defendants' actions, as set forth above, constitute copyright infringement pursuant to 17 U.S.C. § 101 *et seq.* and, in particular, 17 U.S.C. § 501(a).

67.     Defendants' actions, as described above, directly infringe Plaintiffs' exclusive right to reproduce its copyrighted works pursuant to 17 U.S.C. § 106(1).

68.     Defendants' actions, as described above, directly infringe Plaintiffs' exclusive right to prepare derivative works based on the copyrighted works pursuant to 17 U.S.C. § 106(2).

69.     Defendants actions, as described above, directly infringe Plaintiffs' exclusive right to distribute copies of its copyrighted works pursuant to 17 U.S.C. § 106(3).

70.     Defendants' actions, as described above, directly infringe Plaintiffs' exclusive right to display the copyrighted works publicly pursuant to 17 U.S.C. § 106(5).

71.     Defendants' infringements of Plaintiffs' copyrights have been committed willfully and for the purpose of private commercial gain.

72.     Defendants' infringing activities have damaged and will continue to damage Plaintiffs.

73.     Plaintiffs' remedy at law is inadequate and, upon information and belief, unless restrained by this Court, Defendants will continue to infringe Plaintiffs' copyrights.

74.     As a result of Defendants' infringing activities, Plaintiffs are entitled to injunctive relief, damages, and its costs and reasonable attorneys' fees as set forth in 17 U.S.C. §§ 502, 503, 504 and 505.

**COUNT II**
**VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT**
**PURSUANT TO 17 U.S.C. § 1201**

75.     Plaintiffs reallege and incorporate as if fully set forth herein the allegations contained in Paragraphs 1 through 74.

76.     Defendants' actions, as described above, constitute direct circumvention of a technological measure that effectively controls access to a copyrighted work protected by the Copyright Act in violation of 17 U.S.C. § 1201(a)(1).

77.     As described above, Defendants offer to the public, provide, or otherwise traffic in its Evony Second Opinion, ETA and Evomap technologies, products, services or devices that are primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected by the Copyright Act in violation of 17 U.S.C. § 1201(a)(2)(A).

78.     As described above, Defendants offer to the public, provide, or otherwise traffic in its Evony Second Opinion, ETA and Evomap technologies, products, services or devices that have only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title in violation of 17 U.S.C. § 1201(a)(2)(B).

79.     As described above, Defendants offer to the public, provide, or otherwise traffic in its Evony Second Opinion, ETA and Evomap technologies, products, services or devices that are marketed by Defendants for use in circumventing a technological measure that effectively controls access to a work protected under the Copyright Act in violation of 17 U.S.C. § 1201(a)(2)(C).

80.     As described above, Defendants offer to the public, provide, or otherwise traffic in its Evony Second Opinion, ETA and Evomap technologies, products, services or devices that are primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects Plaintiffs' exclusive rights under the Copyright Act in its *Evony* Game, or a portion thereof, in violation of 17 U.S.C. § 1201(b)(1)(A).

81.     As described above, Defendants offer to the public, provide, or otherwise traffic in its Evony Second Opinion, ETA and Evomap technologies, products, services or devices that have only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects Plaintiffs' exclusive rights under the Copyright Act in the *Evony* Game, or a portion thereof, in violation of 17 U.S.C. § 1201(b)(1)(B).

82.     As described above, Defendants offer to the public, provide, or otherwise traffic in its Evony Second Opinion, ETA and Evomap technologies, products, services or devices that

are marketed by Defendants for use in circumventing protection afforded by a technological measure that effectively protects Plaintiffs' rights under the Copyright Act in the *Evony* Game, or a portion thereof, in violation of 17 U.S.C. § 1201(b)(1)(C).

83.     Defendants' conduct, as described above, has been conducted willfully and for private commercial gain.

84.     Defendants' conduct, as described above, has damaged Plaintiffs and unjustly enriched Defendants in an amount to be proven at trial.

85.     Defendants' conduct, as described above, has damaged and will continue to damage Plaintiffs.

86.     Plaintiffs' remedy at law is inadequate and, upon information and belief, unless restrained by this Court, Defendants will continue to violate 17 U.S.C. § 1201.

87.     As a result of Defendants' infringing activities, Plaintiffs are entitled to injunctive relief, damages, and its costs and reasonable attorneys' fees as set forth in 17 U.S.C. §§ 502, 503, 504 and 505.

<u>**COUNT III**</u>
<u>**INFRINGEMENT OF TRADEMARK PURSUANT TO 15 U.S.C. § 1114**</u>

88.     Plaintiffs reallege and incorporate as if fully set forth herein the allegations contained in Paragraphs 1 through 87.

89.     Plaintiffs own all substantial rights and good will in U.S. Trademark Registration No. 3,878,532, registered on November 23, 2010, for the EVONY trademark ("EVONY Mark"), with a date of first use and first use in commerce of May 6, 2009.  A true and correct copy of the EVONY Mark registration certificate is attached hereto as Exhibit E.

90.     The EVONY Mark is registered under International Class 9 for "computer games, namely, computer game programs downloadable via the internet; video game software," and International Class 41 for "computer games, namely, providing online computer games."

91.     The EVONY Mark is distinctive for computer games, computer game programs and video game software.

92.     The EVONY Mark identifies Plaintiffs to consumers as the source of quality computer games, computer game programs and video game software.

93.     Plaintiffs have spent considerable money and resources advertising their products and services under the EVONY Mark.

94.     As a result of its continued use, the EVONY Mark has become associated in the minds of consumers as identifying Plaintiffs as the source of quality computer games, computer game programs and video game software.

95.     Upon information and belief, Defendants advertised, offered for sale, or sold its Evony Second Opinion, EvoMap and ETA products and services by improperly, wrongfully and without authorization using the EVONY Mark on its website, www.xandiumstudios.net, and in the name of its products. *See, e.g.* Exhibits H, K and J.

96.     Upon information and belief, Defendants' use of Plaintiffs' EVONY Mark has caused and will likely to cause confusion among consumers as to the source, origin, affiliation with or sponsorship of Defendants' products or services in violation of 15 U.S.C. § 1114.

97.     Defendants' infringing activities have damaged Plaintiffs.

98.     Upon information and belief, if not enjoined by this Court, Defendants will continue to infringe the EVONY Mark.

99.    As an actual and proximate cause of Defendants' improper and unauthorized use of the EVONY Mark, Plaintiffs are entitled to injunctive relief and damages as set forth in 15 U.S.C. §§ 1116, 1117 and 1118.

100.    Defendants have had actual notice of, or should have reasonably known of the existence of, the EVONY Mark and despite such notice, have continued to engage in acts of infringement of the EVONY Mark, making Defendants' past and continued acts of infringement willful and deliberate.

101.    As an actual and proximate cause of Defendants' willful and deliberate infringement of the EVONY Mark, Plaintiffs are entitled to multiple damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

### COUNT IV
### INFRINGEMENT OF TRADE DRESS PURSUANT TO 15 U.S.C. § 1125

102.    Plaintiffs reallege and incorporate as if fully set forth herein the allegations contained in Paragraphs 1 through 101.

103.    Plaintiffs' *Evony* Game is comprised of non-functional designs and aesthetic features, which, taken together, are arbitrary embellishments that create an overall look and feel to the *Evony* Game that is non-functional and unique to Plaintiffs, adopted for the purpose of identifying Plaintiffs as the source of its goods that are sold in commerce ("Plaintiffs' Trade Dress").

104.    Plaintiffs' Trade Dress in the overall look and feel of its *Evony* Game is created by the combination and configuration of the non-functional designs and aesthetic features comprising:  the shape and design of the game; the shape and design of the characters, buildings, environments and features of the game; the shape, design, placement and color scheme of the

buttons, toolbars and menus within the game; and the overall configuration and appearance of these features in combination in the game. *See* Exhibit F.

105.    Plaintiffs' Trade Dress is inherently distinctive and/or has acquired secondary meaning.

106.    Defendants' products, including the Evony Second Opinion game, mimic the look and feel of Plaintiffs' Trade Dress such that Defendants' products do and/or have been likely to cause confusion, or to cause mistake, or to deceive consumers into believing that the products and services sold by Defendants originate from or are sponsored by Plaintiffs. *Compare* Exhibit F *with* Exhibit I.

107.    Defendants' products, including the Evony Second Opinion game, infringe Plaintiffs' trade dress.

108.    Defendants' infringing activities have damaged Plaintiffs.

109.    Upon information and belief, Defendants will continue to infringe upon Plaintiffs' Trade Dress, causing irreparable harm to Plaintiffs, unless enjoined by this Court.

110.    As an actual and proximate result of Defendants' infringement of Plaintiffs' Trade Dress, Plaintiffs are entitled to injunctive relief and damages pursuant to 15 U.S.C. §§ 1116, 1117 and 1118.

111.    Upon information and belief, Defendants had actual notice of, or should have known of the existence of, Plaintiffs' Trade Dress and despite such notice, Defendants have continued to engage in acts of infringement of Plaintiffs' Trade Dress that are deliberate and willful.

112.    As an actual and proximate result of Defendants' willful infringement of Plaintiffs' Trade Dress, Plaintiffs are entitled to multiple damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT V**
**BREACH OF CONTRACT**

113.    Plaintiffs reallege and incorporate as if fully set forth herein the allegations contained in Paragraphs 1 through 112.

114.    Plaintiffs have provided the services contemplated in consideration for Defendants' agreement to the Terms of Use.

115.    Defendants' actions, as described above, constitute breach of the Terms of Use agreement entered into or agreed to by Defendants, in violation of the laws of the State of Delaware.  Exhibit G.

116.    As a direct and proximate result of Defendants' breach of the Terms of Use, Plaintiffs have suffered and will continue to suffer harm and irreparable injury.

**COUNT VI**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**PURSUANT TO PENNSYLVANIA LAW**

117.    Plaintiffs reallege and incorporate as if fully set forth herein the allegations contained in Paragraphs 1 through 116.

118.    As described above, every prospective player of the *Evony* Game must first agree to the Terms of Use before accessing and playing the *Evony* Game, thereby creating valid and enforceable contracts between Plaintiffs and players of the *Evony* Game.  *See* Exhibit G.

119.    Upon information and belief, Defendants are aware of the contractual relations between Plaintiffs and players of the *Evony* Game by virtue of Defendants entering into the same valid and enforceable contract and postings on Plaintiffs' forums discussing the Terms of Use.

120.    As described above, Defendants intentionally induce players of the *Evony* Game to breach the Terms of Use with Plaintiffs by purchasing and/or utilizing products that mimic the look and feel of the *Evony* Game, including Defendants' Evony Second Opinion game, as well as cheats, automations software (bots), hacks, mods and other unauthorized software, databases or scripts designed to modify the *Evony* Game experiences, and software that intercepts, "mines," or otherwise collects information from or through the *Evony* Game, including Defendants' EvoMap and ETA products.

121.    Upon information and belief, Defendants, as described above, intend to harm Plaintiffs by interfering with Plaintiffs' contractual relations with players of the *Evony* Game for its own commercial gain.

122.    Defendants have no privilege or justification for its tortious interference.

123.    Defendants' copying of the look and feel of the *Evony* Game and sale of unauthorized "cheats" has induced contractual players of the *Evony* Game to play Defendants' unauthorized game rather than Plaintiffs' *Evony* Game, and to use Defendants' unauthorized software in breach of their Terms of Use rather than purchasing game enhancements and features from Plaintiffs.

124.    As a direct and proximate result of Defendants' tortious interference, Plaintiffs have suffered damages, including loss of sales of features and enhancements to the *Evony* Game, from players who have entered into the Terms of Use.

125.    Plaintiffs are entitled to punititve damages because Defendants' conduct was committed willfully, maliciously and so carelessly as to indicate a wanton disregard for the rights of Plaintiffs.

## COUNT VII
## TORTIOUS INTERFERENCE WITH PROPSECTIVE ECONOMIC ADVANTAGE PURSUANT TO PENNSYLVANIA LAW

126.   Plaintiffs reallege and incorporate as if fully set forth herein the allegations contained in Paragraphs 1 through 125.

127.   As described above, every prospective player of the *Evony* Game must first agree to the Terms of Use before accessing and playing the *Evony* Game.  *See* Exhibit G.

128.   Plaintiffs have an expectancy in advancing future economic relationships with prospective players of the *Evony* Game that are required to enter into the Terms of Use to play the *Evony* Game.

129.   Upon information and belief, Defendants' copying of the look and feel of the *Evony* Game has induced prospective players of the *Evony* Game to play Defendants' unauthorized game rather than Plaintiffs' *Evony* Game.

130.   Defendants have no privilege or justification for its tortious interference.

131.   As a direct and proximate result of Defendants' tortious interference, Plaintiffs have suffered damages, including loss of sales of features and enhancements to the *Evony* Game from prospective contractual players.

132.   Plaintiffs are entitled to punititve damages because Defendants' conduct was committed willfully, maliciously and so carelessly as to indicate a wanton disregard for the rights of Plaintiffs.

## PREYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

i.    a judgment that Defendants have infringed and willfully infringed Plaintiffs' copyrights in violation of 17 U.S.C. § 501;

ii.     a judgment that Defendants have infringed and willfully infringed Plaintiffs'

        copyrights in violation of 17 U.S.C. § 1201;

iii.    a judgment that Defendants have infringed and willfully infringed Plaintiffs'

        trademark in violation of 15 U.S.C. § 1114;

iv.     a judgment that Defendants have infringed and willfully infringed Plaintiffs' trade

        dress in violation of 15 U.S.C. § 1125;

v.      a judgment that this case is exceptional pursuant to 15 U.S.C. § 1117;

vi.     a judgment that Defendants have breached their contract with Plaintiffs under

        Delaware law;

vii.    a judgment that Defendants have tortiously interfered with Plaintiffs current and

        prospective contractual relations and economic advantage in violation of

        Pennsylvania law;

viii.   an injunction preliminarily and permanently enjoining Defendants, their officers,

        employees, agents, subsidiaries, representatives, distributors, dealers, members,

        affiliates, and all persons active in concert or participation with them from:  (a)

        infringing Plaintiffs' copyrighted works; (b) inducing or contributing to

        infringements of Plaintiffs' copyrighted works; (c) violating the prohibitions on

        circumvention of copyright protection systems and trafficking in circumvention

        technology; (d) infringing Plaintiffs' EVONY Trademark; (e) infringing

        Plaintiffs' trade dress in the look and feel of the *Evony* Game; (f) intentionally

        interfering with Plaintiffs' current and prospective contracts and economic

        advantage; and (g) violating the Terms of Use;

ix.     an order directing Defendants to shut down or disable access to www.xandiumstudios.net and any related websites, forums, chat rooms, servers or other online media;

x.      an order directing Defendants to deliver up to Plaintiffs for destruction or impoundment any copies of Plaintiffs' copyrighted material or any document, label, advertisement, or other article in Defendants' possession or under Defendants' control bearing Plaintiffs' trademark or trade dress pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

xi.     an accounting of all of Defendants' profits derived from its infringing activity;

xii.    an award of Plaintiffs' actual damages and any additional profits or disgorgement of Defendants' profits resulting from Defendants' infringements of Plaintiffs' intellectual property rights pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117;

xiii.   an award of statutory damages pursuant to 17 U.S.C. § 504(c);

xiv.    an award of punititve damages resulting from Defendants' conduct having been committed willfully, maliciously and so carelessly as to indicate a wanton disregard for the rights of Plaintiffs;

xv.     an award of multiple damages, costs, attorneys' fees and pre-judgment interest pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117; and

xvi.    such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Eric G. Soller*

Eric G. Soller (PA ID # 65560)
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
P: (412) 263-2000
F: (412) 263-4242
E: EGS@Pietragallo.com
*Counsel for Plaintiffs,* EVONY, LLC and
REGAN MERCANTILE, LLC

## VERIFICATION

I, Benjamin Gifford, declare that I am the Vice Development Director of Evony, LLC, and that I am authorized to make this verification for and on behalf of Evony, LLC. I have read and am familiar with the contents of the foregoing document entitled VERIFIED COMPLAINT, and I hereby verify that the contents of said Verified Complaint are true and correct to the best of my own knowledge, except to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

I understand that false statements herein are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

I declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania and the United States that the foregoing is true and correct.

Executed this _18th_ day of _JANUARY_, 2011.

_____
Benjamin Gifford
Evony, LLC